1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10   JUDIE WOOD,                          )      No.  CV 04-10062-PJW
                                          )
11                    Plaintiff,          )
                                          )
12            v.                          )      MEMORANDUM OPINION AND ORDER
                                          )
13   JO ANNE B. BARNHART,                 )
     COMMISSIONER OF THE SOCIAL           )
14   SECURITY ADMINISTRATION,             )
                                          )
15                    Defendant.          )
     ─────────────────────────────────── )
16

17        Before the Court is Plaintiff's appeal from an adverse decision

18   by the Social Security Administration (hereinafter the "Agency").

19   Plaintiff alleges that the Administrative Law Judge ("ALJ") erred when

20   he concluded that Plaintiff did not suffer from borderline

21   intellectual functioning and, that, therefore, there was no need to

22   call a vocational expert to address Plaintiff's non-exertional

23   limitations.  For the following reasons, the Court concludes that the

24   ALJ's finding that Plaintiff does not suffer from borderline

25   intellectual functioning is not supported by substantial evidence and

26   the case is reversed and remanded for further proceedings.

27        This case presents itself as a relatively simple and

28   straightforward one.  Plaintiff is a 48-year old woman who has never

1   earned more than a few thousand dollars in a year in her life.  (AR
2   67.)  It appears that, in 1991, the Agency determined that she was
3   disabled and paid her benefits for a number of years.  (AR 61, 90,
4   121.)  The benefits were later terminated, in 1999 or 2000, possibly
5   because she was convicted of possessing cocaine and sent to prison,
6   though the reason is unclear.  (AR 75-78.)

7       In September 2000, Plaintiff applied for benefits, again.  She
8   claimed a series of ailments, including seizures, asthma, and
9   depression.  (AR 104.)  None of these ailments appeared to be as
10  severe as Plaintiff claimed that they were and the ALJ properly
11  concluded that they did not interfere with her ability to work.

12      In evaluating Plaintiff's case, however, the Agency sent
13  Plaintiff to a psychologist so that she could determine whether
14  Plaintiff suffered from any mental or emotional impairments.  (AR 219-
15  24.)  The psychologist performed a number of tests on Plaintiff,
16  including "serial sevens," "serial threes," and word tests.  (AR 222.)
17  Based on these tests, a review of Plaintiff's medical records, and her
18  examination of Plaintiff, the psychologist determined that Plaintiff
19  suffered from borderline intellectual functioning, i.e., her IQ was
20  between 71 and 84.[1]  (AR 224.)

21      The Agency also enlisted the services of a consulting
22  psychologist to evaluate Plaintiff's case.  (AR 243-52.)  After
23  reviewing the records, this psychologist, too, determined that

24

25

26      [1]  "Borderline intellectual functioning" is used by clinicians
27  "when the focus of clinical attention is associated with . . . an IQ
    in the 71-84 range."  Diagnostic and Statistical Manual of Mental
28  Disorders-IV-TR 740 (4th ed. rev. 2005).

1  Plaintiff suffered from borderline intellectual functioning.[2]  (AR
2  246, 248.)

3      In the face of the Agency psychologists' opinions that Plaintiff
4  suffered from borderline intellectual functioning, without any
5  contradictory opinions from any other medical source, the ALJ
6  concluded that, in fact, Plaintiff did not suffer from borderline
7  intellectual functioning.  (AR 29-30.)  The ALJ based his conclusion
8  on his finding that Plaintiff was not credible and, therefore, the
9  psychologists' opinions--which were based, in part, on Plaintiff's
10 statements to the examining psychologist and Plaintiff's claimed
11 inability to successfully complete certain tests for the examining
12 psychologist--had to be disregarded.  (AR 29.)  Having concluded that
13 Plaintiff did not suffer from borderline intellectual functioning, the
14 ALJ applied the Grids[3] and determined that Plaintiff was capable of
15 working.  (AR 29.)

16     This Court is charged with affirming the decision of the Agency,
17 provided it is supported by substantial evidence in the record and is
18 not based on legal error.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th
19 Cir. 1989).  "Substantial evidence" has been defined as enough
20 evidence that a reasonable mind might accept as adequate to support a
21 conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  As set

22

23 _____

24     [2]  Plaintiff did not supply the Agency with any records relating
   to borderline intellectual functioning.  The treating records, that
25 consume well over 200 pages of the record, do not contain any testing
   or evaluation relating to this impairment.

26

27     [3]  The Medical-Vocational Guidelines or "Grids," which are found
   at 20 C.F.R. Part 404, Subpart P, Appendix 2, provide the ALJ with a
   framework to determine whether a claimant who does not suffer from
28 non-exertional limitations can work.

1   forth below, the Court finds that the ALJ's conclusion that Plaintiff
2   does not suffer from borderline intellectual functioning is not
3   supported by substantial evidence.  For that reason, the case is
4   remanded for further consideration of the issue.

5       In addition to the uncontradicted opinions of the psychologists
6   that Plaintiff suffered from borderline intellectual functioning,
7   there was other evidence in the record that seems to support this
8   conclusion.  First, Plaintiff claimed that she was in special
9   education classes in high school.  (AR 221.)  The ALJ understandably
10  questions Plaintiff's veracity on this claim.  He notes, for example,
11  that Plaintiff denied being in special education in her application
12  for benefits (AR 87), and did not disclose this fact to prison
13  personnel (AR 185) or to a mental health clinic (AR 310) where she
14  went for treatment.  The Court is not convinced, however, that this
15  evidence is so compelling.  As to the prison form, it appears to have
16  been filled out by a clinician, not Plaintiff, and the answer to the
17  question relating to special education classes is lined through, not
18  answered.  (AR 185.)  All of the other questions in the form are
19  answered with a check in the appropriate box to signal "yes" or "no."
20  (AR 185.)  The mental health clinic form, which was also filled out by
21  someone other than Plaintiff, merely recites that Plaintiff has a 12th
22  grade education.  (AR 310.)  It does not indicate one way or the other
23  whether Plaintiff was in special education classes.

24      As to the Social Security Benefits Application, the Court notes
25  that there is a question in that form that asks the claimant to
26  provide information on whether she was in special education classes
27  and, if so, to provide the name of the school.  (AR 87.)  In this
28  form, which appears to have been filled out by Plaintiff, she

1  indicated that she was not in special education classes.  (AR 87.)  It

2  is not clear from this record why she answered in the negative.  The

3  simplest solution to this problem is to ask Plaintiff under oath at

4  the hearing why she failed to answer the question correctly.  The best

5  evidence, however, given the ALJ's concerns with Plaintiff's candor in

6  these proceedings, is to require that she submit her high school

7  transcripts and records, which would provide a definitive answer as to

8  the type of classes she was taking in high school.

9       More to the point, the Agency may already have these records.

10  There are suggestions in this record that the Agency determined in

11  1991 that Plaintiff was disabled and that it paid her benefits for six

12  or seven years.  Plaintiff herself has made this claim.  (AR 61.)

13  There are other comments in the record by Agency personnel that

14  suggest that Plaintiff's statement is true.  (AR 90, 121.)  Clearly

15  the Agency can confirm with presumably little effort whether Plaintiff

16  has already been determined by the Agency to be disabled and determine

17  the basis for its previous finding of disability, assuming one exists.

18       Finally, the Court finds that where, as here, the ALJ suspects

19  that the claimant has fooled the psychologist retained by the Agency

20  to evaluate her condition and there are no other medical opinions in

21  the record to contradict these psychologist's opinion, the ALJ can

22  direct that objective testing be done to help clarify whether

23  Plaintiff is exaggerating her claims.  These tests, which the Court

24  has seen used in other cases, contain questions that provide a

25  psychologist with objective markers to show whether a patient is

26  feigning below average intelligence.  This objective testing could

27  eliminate some of the guesswork.

28

1    In the end, the Court does not take issue with the ALJ's

2   conclusion that Plaintiff's statements are contradictory and that, in

3   some cases, are exaggerated or fabricated.  This conclusion, however,

4   does not change the fact that Plaintiff may have borderline

5   intellectual functioning.  The Court concludes that the ALJ's finding

6   that Plaintiff does not suffer from borderline intellectual

7   functioning--in the face of two uncontradicted psychologists' opinions

8   that she does--is not supported by substantial evidence in this

9   record.

10    For all these reasons, the case is remanded for further

11   proceedings consistent with this opinion.  The Agency is ordered to

12   re-assess whether Plaintiff suffers from borderline intellectual

13   functioning.  If it is determined that she does, a vocational expert

14   will have to be called to determine whether Plaintiff can still work,

15   despite her condition.

16    IT IS SO ORDERED.

17

18    DATED:    December  20    , 2006.

19

20

21

22    PATRICK J. WALSH
      UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28   S:\PJW\Cases-Soc Sec\WOOD, J 10062\Memo Opinion_Ord.wpd

6